## HOLY CROSS HOSPITAL OF SILVER SPRING, INC. ET AL. v. BETTY JEANNE (JACOBSEN) NICHOLS

[No. 53, September Term, 1980.]

*Decided April 22, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Robert D. Clark,* with whom were *Rollins, Smalkin, Weston, Richards & Mackie* on the brief, for appellants.

*Amici curiae* brief filed by Joseph E. Seagram & Sons, Inc. and Travelers Insurance Co., *Glenn C. Parker, Theodore B. Cornblatt, S. Woods Bennett* and *Smith, Somerville & Case* on the brief.

*Thomas L. Heeney,* with whom were *Robert C. Heeney* and *Heeney, Armstrong & Heeney* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

This appeal presents a purely legal question under the Maryland Workmen's Compensation Act (the Act), Md. Code (1957, 1979 Repl. Vol., 1980 Cum. Supp.), Art. 101, §§ 1 through 102. It is whether a claimant may seek additional temporary total and permanent partial disability benefits when the petition to reopen the claim is filed within five years from the date of last payment by the employer or insurer of medical benefits on behalf of the claimant, but more than five years after the last payment of disability benefits to the claimant. The Workmen's Compensation Commission (Commission) concluded that reopening was time barred. On appeal to the Circuit Court for Montgomery County, the Commission was reversed. The Court of Special

Appeals affirmed the circuit court in an unreported opinion (*Holy Cross Hospital of Silver Spring, Inc. et al. v. Nichols,* No. 1132, Sept. Term, 1979, decided May 27, 1980). We granted certiorari. For the reasons hereinafter set forth we believe the Commission was correct and shall reverse the intermediate appellate court.

The claimant, Betty Jeanne Nichols (nee Jacobsen), on September 16, 1963 sustained a compensable injury to her back. In 1964, 1965 and 1966 the Commission entered orders either awarding temporary total disability benefits or directing the employer and insurer to pay medical expenses incurred, or both. By order of July 6, 1967 an award of compensation for permanent partial disability was made. The claim was reopened at a hearing on November 15, 1971 and by order of December 14, 1971 the Commission (1) "affirmed" its order of July 6, 1967 after finding that the claimant had not sustained any increase in disability; (2) awarded compensation for additional temporary total disability for the period April 22 through July 28, 1971; and (3) ordered the employer and insurer to "pay for costs of medical care and expenses and medicines incurred by the claimant as a result of her accidental injury of September 16, 1963;" all subject to the provisions of the Act.

By letter to the Commission dated February 21, 1978 the claimant applied to reopen in order to raise two issues. The first related to the nature and extent of disability and the second to the failure of the insurer to pay for medical services, treatment and prosthetic appliances for which bills totaling $980.25 were submitted. The employer and the insurer raised the issue of whether "the employee's claim for additional temporary total and permanent partial disability benefits" was barred by limitations. It was stipulated that within the five years immediately preceding the "filing of the request by the claimant that the Commission modify its previous award of disability due to a worsening of her condition, the [claimant] had received medical benefits from the Insurer." The claimant's position that limitations on reopening have not run rests exclusively on this stipulated fact. In its order of November 21, 1978 the Commission

directed the employer and insurer to "pay additional medical expenses" of the claimant "in accordance with the Medical Fee Schedule" but found that limitations had run as to additional temporary total and permanent partial disability benefits.

Resolution of this limitations issue primarily involves interpretation of those sections of the Act which deal with the time for reopening claims and the obligation of the employer to pay medical expenses, and which define the term "compensation."

Section 40 (c) of the Act furnishes the time limit on which the employer relies. It states:

> The powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any award of *compensation* shall be made by the Commission unless application therefor shall be made to the Commission within five years next following the last payment of *compensation.* [Emphasis added.] [1]

The employer's obligation to provide medical treatment and services is imposed by § 37 (a) of the Act which states:

> In addition to the compensation provided for herein the employer shall promptly provide for an injured employee, for such period as the nature of the injury may require, such medical, surgical or other attendance or treatment, nurse and hospital

---

1. Subsection (d) of § 40 provides:

When it shall be established that failure to file an application for change or modification was induced or occasioned by fraud, or by facts and circumstances amounting to an estoppel, application for change or modification shall be filed within one year from the time of the discovery of the fraud or within one year from the time when the facts and circumstances amounting to an estoppel cease to operate and not afterwards.

services, medicines, crutches, apparatus, artificial hands, arms, feet and legs and other prosthetic appliances as may be required by the Commission, *provided, however, that any order or award of the Commission, under this subsection, shall not be construed to reopen any case, or permit any previous award to be changed or modified, except as provided in § 40 (c) and 40 (d) of this article.* [Emphasis added.]

Under subsection (c) of § 37, the Commission is given power to regulate the fees and other charges for such treatment and services.

In *A.G. Crunkleton Electric Co. v. Barkdoll,* 227 Md. 364, 177 A.2d 252 (1962) and in *Andrews v. Decker,* 245 Md. 459, 226 A.2d 241 (1967) we held that under the statutory predecessor to present § 37 (a), the liability of the employer to furnish medical services and treatment is not subject to a period of limitation.

Section 67 (5) of the Act provides a definition. As used in Article 101, " '[c]ompensation' means the money allowance payable to an employee or to his dependents as provided for in this article, and includes funeral benefits provided therein." (Italics in text.)

Simply put, it is the position of the claimant that the term "compensation" in § 40 (c) includes medical benefits, and that she is therefore within the exception referring to § 40 (c) which is found in the proviso clause of § 37 (a). The employer contends that "compensation" as used in § 40 (c) does not include medical benefits because that reading would place a time limit on the obligation imposed by § 37 (a) to provide medical treatment.

In order to determine the legislative intent, we turn initially to the history of the relevant sections. The Workmen's Compensation Law was first enacted by the Acts of 1914, Chapter 800. In § 62.5, the 1914 enactment set forth the same definition of "compensation" which is presently found in § 67 (5) of the Act.

The time within which an award could be reopened was unlimited under the original Act. Acts of 1914, Chapter 800, §§ 39, 42 and 53; *Ireland v. Shipley,* 165 Md. 90, 100-101, 166 A. 593, 596-97 (1933). Chapter 342 of the Acts of 1931 established the first time limit on reopening. Md. Code (1924), Art. 101, § 54 was amended to provide that no modification "of any final award of compensation" was to be made unless applied for within one year "following the final award of compensation." Chapter 236 of the Acts of 1935 increased the period to three years "following the last final award of compensation" where the award had been designated as final, and further provided that, where the award was not so designated, "no additional award . . . of compensation" was to be made unless applied for within three years "following the last payment of compensation under such award or awards not designated by the Commission as final." [2] This reopening section was restructured by Chapter 814 of the Acts of 1957 to its present form, as found in § 40 (c), under which application for modification of "any award of compensation" must be made within a period of time "next following the last payment of compensation." In the 1957 enactment the time period remained three years. It was increased to five years by Chapter 116 of the Acts of 1969.

---

2. The full text of Md. Code (1924 ed.), Art. 101, § 54, as amended by Ch. 236 of the Acts of 1935 is as follows:

The powers and jurisdiction of the Commission over each case shall be continuing and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any final award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within three years next following the last final award of compensation, but no award shall be considered a final award under this Section unless it shall have been so designated on the award by the Commission. In cases where no final award shall have been made by the Commission, but an award not designated as a final award shall have been made by the Commission, no additional award or awards of compensation shall be made by the Commission unless application therefor be made to the Commission within three years next following the last payment of compensation under such award or awards not designated by the Commission as final.

The State Industrial Accident Commission shall not pass any order or make any award designated as a final order or award,

Section 37 (a), dealing with medical benefits, was amended to its present form by Chapter 32 of the Acts of 1960. Amendment of § 37 (a) was initiated by the Governor's Commission to Study Maryland's Workmen's Compensation Laws. That study commission had counseled as follows in its third report (Legislative Council of Maryland, *Report to General Assembly of 1960* at 193):

> We further recommend a change in Section 37 (a) to insure that an injured employee shall receive medical care and prosthetic appliances for as long as the nature of his injury may require them. This amendment is essential in order to remove any uncertainty as to how long an injured employee is entitled to such medical care and so that the provisions of the law requiring claims for compensation and petitions to reopen awards of the Commission within a prescribed time shall not apply to the furnishing of medical care. In other words, the bar of limitations should not be applicable to medical treatment.

Legislation recommended by the study commission had not been enacted in the 1959 session of the General Assembly, and the study commission package of proposed legislation was referred to the Legislative Council. The bill which became Chapter 32 was Legislative Council item No. 35 (6) and was the bill recommended by the study commission. *Report to General Assembly of 1960, supra,* at 123. Set forth below is § 37 (a) as amended by Chapter 32 of the Acts of 1960. Matter appearing in regular case reflects § 37 (a) as it appeared in the Code of 1957. Italics indicate the amendments proposed by the gubernatorial study commission and by the Legislative Council. Capitals indicate amendment to the bill after its introduction.

> (a) In addition to the compensation provided for herein the employer shall promptly provide for an

---

except after a hearing, or unless the parties shall have been afforded an opportunity to ask for a hearing, or unless the parties shall consent to the passage of such final order or award.

injured employee, *for such period as the nature of the injury may require,* such medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches, apparatus, artificial hands, arms, feet and legs *and other prosthetic appliances* as may be required by the Commission, PROVIDED, HOWEVER, THAT ANY ORDER OR AWARD OF THE COMMISSION, UNDER THIS SUBSECTION, SHALL NOT BE CONSTRUED TO REOPEN ANY CASE, OR PERMIT ANY PREVIOUS AWARD TO BE CHANGED OR MODIFIED, EXCEPT AS PROVIDED IN SECTION 40 (C) AND 40 (D) OF THIS ARTICLE.

The concern expressed by the gubernatorial study commission over whether the prescribed time limit on petitions to reopen awards might apply to the furnishing of medical care necessarily reflected that group's uncertainty whether an application for an order that the employer provide medical care would be construed as an application for a "modification or change of any award of compensation" under § 40 (c) of the Act in the 1957 Code. The obvious concern of the General Assembly, as manifested by the proviso clause attached to Chaper 32 in the course of passage, was that the possible enlargement of the time for obtaining an award of medical benefits should not, in and of itself, enlarge the time for reopening disability issues beyond the time already permitted by §§ 40 (c) and 40 (d). Thus, if prior to Chapter 32, § 40 (c) embraced medical benefits, the policy that there be no time limit on an injured employee obtaining medical benefits would have to rest on the position that the new language inserted by Chapter 32 in § 37 (a) ("for such period as the nature of the injury may require") controlled over § 40 (c). Further, if prior to Chapter 32, § 40 (c) embraced medical benefits, the effort by the proviso not to enlarge the time for reopening disability awards would be nugatory if effect were given to the exception for the provisions of § 40 (c). Essentially, it is this latter analysis which the Court of Special Appeals adopted in this case after it concluded that "compensation" in § 40 (c) included medical benefits.

*A.G. Crunkleton Electric Co. v. Barkdoll, supra,* decided January 23, 1962 demonstrates that the amendment proposed by the study commission was not required to make the receipt of medical benefits free of any time limitation. Barkdoll was injured November 26, 1951 and suffered the loss of both arms. After the maximum benefits allowable for both temporary total and permanent total disability had been paid, and all available medical science techniques had been attempted to rehabilitate Barkdoll, the Commission directed the employer to furnish him necessary nursing service beginning as of June 23, 1960. In opposition it was contended that the Commission was not authorized to award nursing service beyond the period of compensation paid for disability. The medicals section of the Act, as it stood prior to Chapter 32 of the Acts of 1960, was applicable. In holding that the liability of the employer to furnish free nursing service and treatment was not subject to a period of limitation we reasoned that "we would have to rewrite the statutes so as to provide for a limitation which is not contained therein" and that "in Maryland, no reference whatsoever as to time or amount limitations is provided in the statute" with respect to medical benefits. 227 Md. at 368-69, 177 A.2d at 254. We said that the words, "for such period as the nature of the injury may require," were added to § 37 (a) in order to clarify a doubt as to the length of the period for which care could be required. The fact that the title to Chapter 32 of the Acts of 1960 stated that the bill was " 'to change the period of time for furnishing of medical care' " did not show a legislative recognition that the workmen's compensation law had not previously provided for indefinite medical and nursing care, because a subsequent legislative construction of the meaning of a prior statute is not binding or controlling on the Court. 227 Md. at 369, 177 A.2d at 255.

It was implicit in *Crunkleton* that the 1963 Commission directive to pay for future nursing services resulting from the 1951 accident was not governed by the limitations on reopening which, under Chapter 236 of the Acts of 1935, applied to an "additional award or awards of compensation. . . ." What was implicit in *Crunkleton* was made

explicit in *Andrews v. Decker, supra.* That case involved a 1952 accident for which the last payments of medical and temporary total disability benefits were made in January, 1953. In 1964 the claimant was hospitalized. In 1965 he made claim to the Commission solely for medical benefits, which the Commission granted. However, on appeal, the trial court reversed. It reasoned that the reopening section had not been before this Court in *Crunkleton,* that is, that the operation of then Md. Code (1951), Art. 101, § 53, the predecessor of present § 40 (c) of the Act, had not been addressed in that opinion. We reversed in *Andrews* and said that "[t]he question of law in this case is exactly the same as the one presented in" *Crunkleton.* The question of law was answered by emphasizing from *Crunkleton* the statement that § 36 (a) [3] " 'empowers the Commission to order nursing care beyond the obligatory period of compensation *and in addition to other benefits provided in the Workmen's Compensation Law if the circumstances merit such additional financial aid.' "* 245 Md. at 463, 226 A.2d at 243.

The trial court in *Andrews* had concluded that the claim for additional medical was controlled by *Vigneri v. Mid City Sales Co.,* 235 Md. 361, 201 A.2d 861 (1964). That case involved a 1954 accident. The last payments by the employer or insurer were made that year. In 1958 the claimant was hospitalized and requested a hearing before the Commission on the nature and extent of disability and on the issue of additional medical benefits. Only the question of the nature and extent of disability had been presented to this Court in *Vigneri* where we held the claim to be barred by limitations. The trial court in *Andrews,* however, had read *Vigneri* as also having dealt with the claim for additional medical and as also having denied it on limitations grounds applicable to reopening claims. In *Andrews* we explained the scope of the *Vigneri* holding by saying:

> The issue of reimbursement of medical expenses, which reimbursement was requested in addition to

---

[3.] Code (1951) and the predecessor to present § 37 (a).

the petition to reopen the case, was not decided. If it had been, its answer would have been controlled by *A.G. Crunkleton v. Barkdoll, supra,* which was decided nearly two and one-half years before. It is interesting to note that the lower court judge in his opinion denying Vigneri's petition stated that "since a payment of, or a reimbursement for, medical expenses does not constitute a 'payment of compensation' under the law of this state, it is immaterial whether there were or were not additional medical expenses paid, or reimbursed, after the last payment of actual compensation * * *." Brief and Appendix of Appellant, p. E. 15-16, *Vigneri v. Mid City Sales, supra.* [245 Md. at 462-63, 226 A.2d at 242-43.]

In the instant matter, we need not quibble over whether *Andrews* adopted the analysis of the trial judge in *Vigneri* as part of its holding. What *Andrews* does hold is that the limitations provisions of the reopening section, as they stood in the Code of 1951, did not apply to a claim for medical benefits. The request for additional medical therefore was not a request for an "additional award or awards of compensation" under Md. Code (1951), Art. 101, § 53. Today § 40 (c), the successor provision, provides that "no modification or change of any award of compensation shall be made" unless applied for within five years "next following the last payment of compensation." We neither find, nor have we been directed to, any indication that the General Assembly, by Chapter 814 of the Acts of 1957 which enacted § 40 (c) in its present form, intended in any way to expand the scope of the reopening section beyond its scope at the time of the statutes applicable in *Andrews and Crunkleton.* We believe that under § 40 (c) the request for "modification or change of any award of compensation" which is subject to the current five year limitations provision does not include a claim for medical benefits. Consequently, we reject the claimant's contention in this case that "compensation" as used in § 40 (c) is used in its "broad" context, and includes medical benefits.

The focus of the claimant's attention is on "the last payment of compensation" language in § 40 (c). But the term "compensation" is also used in the same proviso clause of § 40 (c) to refer to the "award of compensation" which may not be modified after expiration of the time limit. Whatever may be the meaning of "compensation" in various parts of the Act, we are hardly permitted to suppose that, absent some clear basis in the context, exactly the same term could be used *in the same clause* with different meanings. *See, e.g., Calvert County v. Monnett,* 164 Md. 101, 104, 164 A. 155, 156 (1933). If § 40 (c) of the Act is now construed to use "compensation" as including medical benefits, then a claim for additional medical could not be made more than five years after the last payment of compensation, including medical, and there would be a limitations period for the payment of medical. This is precisely contrary to the recorded legislative intent and to the holdings of this Court.

We find nothing inconsistent with the analysis above in the reasoning of the court in *Uninsured Employers' Fund v. Booker,* 13 Md. App. 591, 284 A.2d 454 (1971), on which the instant claimant places emphasis.[4] That case held that the compensation for which the Uninsured Employers' Fund was responsible under §§ 90 through 102 of the Act included medical benefits. In addressing an argument based on *Crunkleton* and *Andrews,* that court said (*Id.* at 593-94, 284 A.2d at 456):

> These cases clearly limit themselves to holding that the power of the Commission to modify or change its orders upon application made within three (now five) years next following the last payment of com-

---

4. The claimant relies on the following passage from *Booker* (13 Md. App. at 598, 284 A.2d at 458):

We find it reasonable to conclude that *with respect to each other,* §§ 36 and 37 use the word "compensation" in a limited sense. We find it equally reasonable to conclude that such limited meaning does not attach to the word "compensation" elsewhere in the article, unless indicated by the context, and that all of the benefits of §§ 36 and 37 are included within the broad meaning of "compensation". [Emphasis in text.]

pensation [under present § 40 (c)] imposed no time limitation upon the Commission's power to order payment of medical and related expenses, in the face of the requirement of § 37(a) that such benefits be provided "* * * for such period as the nature of the injury may require * * *".

Our only disagreement with this analysis is that the quoted language from § 37 (a) was not in the statutes applied to the *Crunkleton* and *Andrews* decisions. Its subsequent inclusion serves only to reinforce the legislative policy which claimant's contention would subvert.

The definition of compensation in § 67 (5) does not compel a holding consistent with the claimant's interpretation of § 40 (c). That definition was the frame of reference utilized in *Chanticleer Skyline Room v. Greer,* 271 Md. 693, 319 A.2d 802 (1974) in which we held that attorneys' fees were compensation within the meaning of § 40 (c).[5] This was because there was no dispute that the payment of an attorney's fee is a money allowance which is provided for in the Act. It is a money allowance "payable to an employee" because but "a single award of compensation is made, that which is for the benefit of the employee, and the statute then merely gives an attorney a lien upon this compensation award to the extent of his fee as approved by the Commission." *Id.* at 700, 319 A.2d at 806. The obligation of the employer to provide medical treatment and services, however, does not in every case result in the payment of a money allowance to the employee. The employer can satisfy the obligation by furnishing, or causing to be furnished, the medical treatment, services or appliances directly to the employee.[6]

---

5. It was also argued in *Chanticleer* that the reimbursement paid to the claimant there for a back brace, which was made within five years preceding the petition to reopen the extent of disability determination, satisfied "the last payment of compensation" requirement of § 40 (c), but it was unnecessary to reach that issue in *Chanticleer.*

6. M. Pressman, *Workmen's Compensation in Maryland* § 3-14 (2), at 294-95 (2d ed. 1977), states: "If employees are not instructed by the employer or insurer to report to a specific doctor for treatment, or if because of certain circumstances an employee is unable to go to that doctor, or if the doctor furnished by the employer or insurer is incompetent or not rendering

We are mindful of the rule that the Act "should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes" and that any uncertainty "should be resolved in favor of the claimant." *Howard County Ass'n for Retarded Citizens v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980). In this case, however, the difference in interpretation pits one class of injured workers against another. The construction which reads "compensation" to exclude medical benefits operates to the advantage of those injured workers who may require additional medical treatment more than five years after the last payment of compensation. To the detriment of that group, a reading of "compensation" in § 40 (c) to include medical benefits operates to the advantage of those who both seek to reopen disability and who have received only some medical benefit in the preceding five years. Between these competing interests, it is clear that the General Assembly has come down fully in favor of medical benefits unlimited as to time.

But the claimant in this case argues that "[t]ypically, medical benefits are awarded in the initial Order of Compensation." Thus, it is said that a request for a Commission order directing that medical benefits be paid, made more than five years after the last payment of compensation (defined to include medicals) would merely be an application to the continuing jurisdiction of the Commission under § 40 (c) to enforce a prior order, and not to change or modify "any award of compensation." One difficulty with this argument is that there is no record before us from which we can determine any universal or even "typical" practice of the Commission. The record does, however, reflect that the first order in this case, that of July 9, 1964 awarding compensation for temporary total disability, did not direct the payment of medical bills. The procedural end run which the claimant suggests does not answer the problem of those cases in which additional medical benefits are disputed on the ground that the condition treated was not a result of the occupational

proper and satisfactory treatment, no controversy exists as to the right of an employee to go to any doctor he wishes."

injury, or because the treatment is contended to be unnecessary, or because the charge made is challenged as excessive under § 37 (c) and the fee schedule. If "compensation" in § 40 (c) includes medical treatment, it seems strained at best to say that one seeking more payment for medical treatment is not seeking a change in an award of compensation.

As we see it, our interpretation that "compensation" in § 40 (c) does not include medical benefits, harmonizes all elements of the problem. The "compensation award" sought to be changed or modified under § 40 (c) does not embrace a request for medical benefits, consistent with the results in *Crunkleton* and *Andrews.* The "last payment of compensation" in § 40 (c) does not place a five year limit on the application for medical benefits, consistent with § 37 (a), *Crunkleton, Andrews,* and the study commission report. The words, "for such period as the nature of the injury may require," in § 37 (a) merely clarify, but do not effect a change of, prior law, consistent with *Crunkleton.* Finally, the proviso in § 37 (a) is given effect. Reopening of disability is not tied to the unlimited obligation for medical benefits. The payment of medical benefits does not in and of itself "permit any previous award to be changed or modified . . . ." Rather, one who receives medical benefits and who seeks to reopen "an award of compensation" must do so within five years from the last payment of compensation (excluding medicals).

> *Judgment of the Court of Special Appeals reversed.*
>
> *Case remanded for the entry of an order reversing the judgment of the Circuit Court for Montgomery County and directing the entry of an order by the Circuit Court for Montgomery County affirming the order of the Workmen's Compensation Commission of November 21, 1978.*
>
> *Costs to be paid by Betty Jeanne (Jacobsen) Nichols.*